# APPENDIX 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **COREY JOHNSON[1],** | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **Case No. 3:92CR68** |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent.** | : | |

**MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255
PURSUANT TO *JOHNSON V. UNITED STATES*, 135 S. CT. 2551 (2015)**

Movant, Corey Johnson, through his undersigned counsel, hereby files a motion to set aside the judgment against him on Counts 9, 12, 15, 20, and 26, in case number in the above-captioned case, pursuant to 28 U.S.C. § 2255. As explained below, Mr. Johnson's convictions under 18 U.S.C. § 924(c) must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States,* 135 S. Ct. 2551 (2015) and *Welch v. United States,* 136 S. Ct. 1257 (2016).

**INTRODUCTION**

On February 3, 1993, Corey Johnson was convicted of twenty-seven counts in the above-captioned indictment, including five counts of using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c), seven counts charging federal homicide offenses in violation of 21 U.S.C. § 848(e)(1), and eleven counts of murder, maiming, and assault in violation of 18 U.S.C. § 1959(a). The jury subsequently sentenced Mr. Johnson to seven death sentences, one for each count under § 848(e)(1).

---

[1] Mr. Johnson's actual first name is "Corey" but it was misspelled as "Cory" in his indictment, in various pleadings filed before this Court, and in the subsequent decisions following his convictions. Mr. Johnson is using the correct spelling of his name in this pleading.

On June 26, 2015, the Supreme Court held in *Johnson* that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally void for vagueness. That clause, the Court held, cannot constitutionally define a "crime of violence" for purposes of the ACCA's sentence-enhancing provisions. *Johnson,* 135 S. Ct. at 2557. On April 18, 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

The residual clause of § 924(c), the crime of violence statute under which Corey Johnson was convicted, is materially indistinguishable from the clause *Johnson* invalidated. After *Johnson,* intentional killing, as defined by 21 U.S.C. § 848(e)(1) and murder, maiming, assault pursuant to 18 U.S.C. § 1959(a), the predicates for the § 924(c) crimes with which Mr. Johnson was charged, categorically fail to qualify as "crimes of violence." Therefore, Mr. Johnson's § 924(c) convictions are invalid. Once these convictions have been vacated, Corey Johnson is entitled to be resentenced on his remaining convictions.

The relevant portion of § 924(c) includes two alternative clauses defining "crimes of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause. It applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" The second, § 924(c)(3)(B), is commonly referred to as the residual clause. It applies to any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

This second definition, the residual clause, is indistinguishable in all material respects from the residual clause of the ACCA that the Supreme Court in *Johnson* deemed unconstitutionally vague. *See Johnson,* 135 S. Ct. at 2557. Indeed, at least three federal courts

2

of appeals have applied *Johnson* to invalidate the residual clause of another statute, 18 U.S.C. §

16(b), a clause that is identical to that of § 924(c).[2]  *See United States v. Gonzalez-Longoria,* 813

F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719, 722-23 (7th Cir. 2015);

*Dimaya v. Lynch,* 803 F.3d 1110, 1117-20 (9th Cir. 2015).  And relying on those circuits'

reasoning, at least two district courts have held § 924(c)'s residual clause to be void for

vagueness as well.  *See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545, *3-

4, *6 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL

9311983, *3 (D. Md. Dec. 30, 2015).

These cases compel the same result in Corey Johnson's case.  Because § 924(c)'s residual

clause is void for vagueness, it cannot constitutionally define "crimes of violence" for purposes

of § 924(c) convictions.

Furthermore, intentional killing under 21 U.S.C. §848(e)(1) and murder, maiming, and

assault under 18 U.S.C § 1959(a) do not categorically qualify as "crimes of violence" under the

remaining force clause.  This is because under both § 848(e)(1) and 18 U.S.C § 1959(a), the

killing can be accomplished by non-violent means, as can maiming and assault under § 1959.

For example, both homicide crimes can be committed by withholding a person's life-preserving

medication or locking someone in a car on a hot day.  Section 848 can also be committed by the

accused counseling, commanding or inducing someone else to kill another individual.  And §

---

[2] Like § 924(c)(3), § 16 defines a "crime of violence" as:

(a)     an offense that has as an element the use, attempted use, or threatened use of
        physical force against the person or property of another, or
(b)     any other offense that is a felony and that, by its nature, involves a substantial risk
        that physical force against the person or property of another may be used in the
        course of committing the offense.

18 U.S.C. § 16.

3

1959 can be violated by murders involving the felony murder doctrine without the specific intent to kill and can be based on felonies that do not require the use of physical force.   Similarly, § 1959 maiming and assault offenses do not require the actual use of violent physical force. Sections 848(e)(1) and 1959(a) therefore do not require as essential elements the use, attempted use, or threatened use of physical force.  Intentional killing under § 848(e)(1) and murder, maiming, and assault under § 1959 categorically fail to qualify as "crimes of violence," and Mr. Johnson's convictions under § 924(c) cannot stand.

Because § 924(c)'s residual clause is unconstitutional, Mr. Johnson's § 924(c) convictions and the death sentences he received after the sentencing phase of his trial (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction.  Further, Corey Johnson is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).

Accordingly, Mr. Johnson respectfully asks this Court to grant his § 2255 motion and vacate his § 924(c) convictions and death sentence.

Below, Mr. Johnson provides more detailed support for this motion.

4

## STATEMENT OF RELEVANT FACTS

### A.    Conviction and Sentencing.

Mr. Johnson and six co-defendants, Richard Tipton, James H. Roane, Jr., Vernon L. Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis, were jointly charged in this Court with conspiracy to possess with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1) (Count 1).  In addition, some but not all of the defendants were separately charged with (i) engaging in a continuing criminal enterprise (hereafter "CCE") in violation of 21 U.S.C. § 848 (Count 2); (ii) while engaged in a CCE,  knowingly, intentionally and unlawfully causing the murder of nine separately named individuals in violation of 21 U.S.C. § 848(e)(1)(A) (Counts 3, 5, 8, 11, 17, 18, 19, 24, and 25); (iii) knowingly, intentionally, and unlawfully causing the murder of ten separately named individuals as part of an enterprise engaged in racketeer-influenced and corrupt organizations (hereafter "RICO") activity in violation of 18 U.S.C. § 1959 (Counts 4, 7, 10, 13, 14, 21, 22, 23, 27, and 28); (iv) using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 6, 9, 12, 15, 20, and 26); (v) knowingly, intentionally, and unlawfully maiming two separately named individuals as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Counts 29 and 30); (vi) knowingly, intentionally, and unlawfully committing assault resulting in serious bodily injury to an individual as part of an enterprise engaged in RICO activity in violation of 18 U.S.C. § 1959 (Count 16); (vii) knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 31); and (viii) knowingly and intentionally possessing with intent to distribute more than 50 grams of

5

cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 32 and 33).[3] The government sought

the death penalty against Mr. Tipton, Mr. Johnson, and Mr. Roane pursuant to 21 U.S.C. §

848(e)(1) and the jury returned death verdicts against all three men. Mr. Johnson, specifically,

was sentenced to death by the jury on seven counts for the § 848 murder offenses.

**B.    Direct Appeal.**

Mr. Johnson timely appealed to the Fourth Circuit, raising various issues relating to the

guilt and penalty phases of his trial. The court of appeals rejected all of his arguments and

affirmed his convictions and death sentence. *United States v. Tipton et. al.*, 90 F.3d 861 (4th Cir.

1996). The United States Supreme Court denied certiorari. *Roane v. United States,* 520 U.S.

1253 (1997).

**C.    Previous § 2255 Motion.**

Following the denial of certiorari, Mr. Johnson timely filed a motion for collateral relief

under 28 U.S.C. § 2255 and later filed several amendments to that motion.[4] He asserted in the

motion and in the amendments to the motion the following claims: (i) error during the jury

selection process on a variety of grounds; (ii) prosecutorial misconduct in violation of Mr.

Johnson's due process rights on numerous grounds during the jury selection and during the guilt

and sentencing phases of the trial; (iii) insufficient evidence to prove Mr. Johnson was a

supervisor in a CCE conspiracy; (iv) ineffective assistance of counsel at the trial and appellate

---

[3] Prior to trial, Mr. Thomas' case was severed from his co-defendants' cases and, after Mr. Tipton, Mr. Roane, and Mr. Johnson were tried, Mr. Thomas was tried and convicted in a separate trial. Although the Government originally sought the death penalty against Mr. Thomas, it later withdrew its death notice prior to trial. The Government did not seek the death penalty against Mr. Gaiters, Mr. Hardy, or Ms. Reavis. Mr. Gaiters and Mr. Harvey pled guilty before trial. Ms. Reavis was tried jointly with Mr. Tipton, Mr. Roane, and Mr. Smith, and she was convicted of the one count charged against her.

[4] Mr. Johnson's initial § 2255 motion was docketed under criminal case number 3:92CR68 and civil case number 3:97CV895.

6

stages on a variety of grounds during the guilt and sentencing phases of the trial; and (v) constitutional challenges to his death sentences on various grounds. This Court denied relief. *United States v. Roane*, No. 3:92CR68 (E.D. Va. May 1, 2003).

The Fourth Circuit affirmed the denial of relief. *Roane v. United States,* 378 F.3d 382 (4th Cir. 2004). The United States Supreme Court denied certiorari. *Johnson v. United States,* 546 U.S. 810 (2005).

### D.     *Johnson v. United States.*

On June 26, 2015, the Supreme Court issued its decision in *Johnson,* 135 S. Ct. 2551. In *Johnson,* the Supreme Court overruled *Sykes v. United States,* 131 S. Ct. 2267 (2011) and *James v. United States,* 550 U.S. 192 (2007), finding ACCA's residual clause too vague to provide adequate notice under the Due Process Clause of the Fifth Amendment. Specifically, *Johnson* held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," therefore "[i]ncreasing a defendant's sentence under the clause denies due process of law." 135 S. Ct. at 2557.

### E.     *Welch v. United States.*

After *Johnson* was decided, federal prisoners throughout the country sought to challenge ACCA-enhanced sentences, as well as convictions and sentences imposed under materially indistinguishable residual clauses, such as that in 18 U.S.C. § 924(c). This led to conflict over whether *Johnson* announced a new substantive rule, which would apply retroactively to cases on collateral review, or whether it only announced a new procedural rule, which would not necessarily apply retroactively. On April 18, 2016, the Supreme Court resolved the issue, finding *Johnson*'s rule substantive and thus applicable retroactively to cases on collateral

review. *Welch,* 136 S. Ct. at 1265. After *Johnson* and *Welch,* Corey Johnson's § 924(c) convictions cannot be sustained.

## ARGUMENT

**I.    In light of *Johnson,* Corey Johnson's § 924(c) convictions cannot be sustained because the predicate crimes underlying those convictions do not qualify as "crimes of violence."**

Mr. Johnson's convictions for using or carrying a firearm during and in relation to "crimes of violence" are void because the "crime of violence" element cannot be satisfied here. After *Johnson,* the predicate offenses of federal intentional killing, murder, maiming, and assault cannot, as a matter of law, qualify as "crimes of violence" for purposes of § 924(c). As explained below, intentional killing under 21 U.S.C. § 848(e)(1) and murder, maiming, and assault under 18 U.S.C. § 1959(a) categorically fail to qualify as predicate "crimes of violence" under § 924(c) because they do not meet the definition of the force clause and because the unconstitutional residual clause cannot define a valid federal crime.

**A.    Section 924(c)'s residual clause is materially identical to ACCA's residual clause and therefore like ACCA's clause is  unconstitutionally void for vagueness.**

Section 924(c) defines a "crime of violence" in two ways:

(3)    For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

8

The first clause, § 924(c)(3)(A), is known as the force or elements clause. The second, § 924(c)(3)(B), is the residual clause.

The ACCA, 18 U.S.C. § 924(e), provides for an enhanced penalty for those convicted of possessing a firearm after sustaining three or more convictions for a "serious drug offense" or a "violent felony." ACCA's definition of "violent felony" includes the residual clause struck down in *Johnson,* a clause that is materially indistinguishable from that in § 924(c)'s residual clause. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that
>
> (i)      has as an element the use, attempted use, or threatened use against the person of another, or
>
> (ii)      is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Section 924(c)'s residual clause suffers from the same flaws that rendered ACCA's residual clause unconstitutionally vague under the required categorical approach. As with ACCA's residual clause, § 924(c)'s clause "require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Welch,* 136 S. Ct. at 1262. "[T]he 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows." *Id.* (quoting *Johnson,* 135 S. Ct. at 2557).

The constitutional guarantee of due process, the *Johnson* Court found, cannot tolerate "condemn[ing] someone to prison for 15 years to life," the punishment prescribed under ACCA, based upon "so shapeless a provision." *Johnson,* 135 S. Ct. at 2560. Likewise, due process

9

cannot tolerate condemning a person to death based upon § 924(c)'s equally shapeless residual clause.

Moreover, courts have already invalidated a residual clause identical to that in § 924(c). The residual clause of 18 U.S.C § 16(b) is the mirror image of that of § 924(c), and the Fifth, Seventh and Ninth Circuits have all struck it down following *Johnson. See United States v. Fuertes*, 805 F.3d. 485, 498-500 (4th Cir. 2015); *see also United States v. Gonzalez-Longoria,* 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja,* 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch,* 803 F.3d 1110 (9th Cir. 2015). Still further, at least two district courts have considered § 924(c)'s residual clause itself and have found it void for vagueness in light of *Johnson. See United States v. Lattanaphom,* __ F. Supp. 3d __, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Edmundson,* __ F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015). This Court should do the same.

### 1. *Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."

The Supreme Court began its analysis in *Johnson* by noting that the so-called categorical approach mandates the use of a two-step framework to determine whether a crime is a violent felony within the meaning of ACCA. *Johnson,* 135 S. Ct. at 2557, 2562. As the Seventh Circuit described it: "In the first step, the court must determine 'the kind of conduct that the crime involves in "the ordinary case"'" as opposed to the facts on the ground in the defendant's . . . case." *Vivas-Ceja,* 808 F.3d at 721 (quoting *Johnson,* 135 S. Ct. at 2557). The second step also depends on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime 'presents a serious potential risk of physical injury.'" *Id.*

But this required approach to ACCA's residual clause "conspire[d] to make it unconstitutionally vague." *Johnson,* 135 S. Ct. at 2557. The first step is problematic, the

10

*Johnson* Court explained, because too much uncertainty exists about what constitutes the "ordinary case" of a crime. *Id.* "The residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. In fact, the Court explained further, statistical analysis of reported cases, Google, and gut instinct are all equally unreliable in identifying the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer,* 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)).

The second step, too, is fatally flawed because even if the "ordinary case" could indeed be determined, there would still be too much "uncertainty about how much risk it takes" before such "ordinary case" should be deemed sufficiently serious to be categorized as a violent felony. *Vivas-Ceja,* 808 F.3d at 722 (quoting *Johnson,* 135 S. Ct. at 2558).

Significantly, the Court's critique of the second step did not turn on the type of risk specified in ACCA's invalidated residual clause, namely, the "serious potential risk of *physical* injury." Rather, as with the first step, the Court's analysis turned on the shapeless "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson,* 135 S. Ct. at 2558. Risk assessment, the Court made clear, is not inherently unconstitutional. *See id.* at 2561. But because risk assessment under ACCA's residual clause is based not on the facts of the actual case but on the amorphous "ordinary case," the clause is unconstitutionally vague. The indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is simply more than the Due Process Clause can bear, held the Court. *Id.* at 2558.

*Johnson* thus upended not just ACCA's residual clause, but also the "ordinary case" analysis compelled by such a statutory framework. In other words, the only way to apply the

11

residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### 2. For the reasons identified in *Johnson,* § 924(c)(3)(B) also is unconstitutionally vague.

Notwithstanding that § 924(c)'s residual clause is not a mirror image of ACCA's, the two clauses are functionally the same. The difference in exact wording does not affect the constitutional analysis that shows both to be void for vagueness.

For one thing, courts regularly equate ACCA's "violent felony" definition with other statutes defining crimes of violence, including 18 U.S.C. § 16(b), which as noted above is identical to § 924(c)(3)(B). *See, e.g., Chambers v. United States,* 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (collecting cases); *see also United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same).

Further, although the risk at issue in ACCA is risk of injury while the risk at issue in § 924(c) is that physical force will be used, both statutes require that risk be assessed via the "ordinary case" method. It is this analytical framework that infects both statutes with a due process problem.

Under § 924(c), just as under ACCA, courts must follow the same two-step process. First, the court must envision the "ordinary case" embodied by a felony. Second, the court must assess the quantum of risk posed by such "ordinary case." As the Fourth Circuit explained in the context of reviewing § 16(b) (which is identical to § 924(c)):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James,* 550 U.S. at 208. As long as an offense is of a type that, *by its nature,* presents a

12

substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*United States v. Avila,* 770 F.3d 1100, 1107 (4th Cir. 2014) (emphasis added). At least three circuits have held that because the shapeless "ordinary case" approach applies to cases under § 16(b), that statute's residual clause is void after *Johnson. See Gonzalez-Longoria,* 813 F.3d at 235; *Vivas-Ceja,* 808 F.3d at 722-23; *Dimaya,* 803 F.3d at 1117-20.

It follows that the same analysis applies to the identical residual clause of § 924(c), and thus *Avila* controls here. Even more, consistent with *Avila*, in *Fuertes*, 805 F.3d at 498, 500 n.6, the Fourth Circuit directly applied the "ordinary case" inquiry to the § 924(c) residual clause. *See also United States v. Naughton*, 621 F. App'x. 170, 178 (4th Cir. 2015) (applying the ordinary case inquiry to § 924(c)(3)(B)). Thus, as Judge Grimm explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4. Section 924(c)'s residual clause, just like that of § 16(b) and ACCA, suffers from the "double indeterminacy" that the *Johnson* court held the Due Process Clause cannot tolerate.

Indeed, in the course of litigating *Johnson,* the United States conceded that the residual clauses contained in ACCA and § 16(b) (and necessarily in the identical § 924(c)) pose the same problem:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause. Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

Supplemental Brief for the United States at 22-23, *Johnson v. United States,* No. 13-7120 (U.S. Mar. 30, 2015), 2015 WL 1284964. The United States was correct in its analysis, and this Court should hold it here to the same concession.

13

In sum, § 924(c), like ACCA, requires courts to apply "ordinary case" analysis to assess the risk involved in a  predicate offense.  Because this analysis involves the same flawed steps that brought down the ACCA residual clause, § 924(c)(3)(B) also cannot survive constitutional scrutiny.  Under the due process principles articulated in *Johnson*, § 924(c)'s residual clause cannot be used to support a conviction under that statute.  Mr. Johnson's convictions under § 924(c)—and the jury's decision to impose death sentences that was certainly influenced by the multiple convictions for using firearms in relation to those crimes of violence—must be overturned because the convictions turn on a determination that the predicate murders and other predicate crimes with which he was charged are "crime[s] of violence."  And federal homicides, maiming, and assaults, the section that follows will demonstrate, qualify as crimes of violence only under the unconstitutional residual clause; they cannot satisfy the remaining force or elements clause.

    **B.**        **Homicide convictions pursuant to § 848(e)(1)(A) and § 1959(a) and maiming and assault convictions under § 1959(a) fail to qualify categorically as "crimes of violence" under the force clause of § 924(c) because they may be committed without the use of violent or strong physical force.**

        **1. The categorical approach applies to determining whether an offense qualifies as a "crime of violence" under the force clause.**

In determining whether an offense qualifies as a "crime of violence" under the force clause of § 924(c), courts must employ the categorical approach.  *See Descamps v. United States,* 133 S. Ct. 2276, 2283 (2013).  This approach requires that courts "look only to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and *not* to the particular facts underlying [the offense]."  *Id.*  In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute, including the least culpable conduct, matches or is narrower than the "crime of violence" definition.  *See, e.g.,*

*United States v. Torres-Villalobos,* 487 F.3d 607, 616 (8th Cir. 2007); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012). If the most innocuous conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

Given this, an offense will qualify as a "crime of violence" under the force clause of § 924(c) only if it has, as an element, "the use, attempted use, or threatened use of physical force" against another person. 18 U.S.C. § 924(c)(3)(A). "Physical force," in turn, has two requirements. First, "physical force" must involve *violent* force—that is, "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). Second, the use of such force "must be intentional, not just reckless or negligent." *United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir. 2015); *see also Leocal v. Ashcroft,* 543 U.S. 1, 12-13 (2004).

It is not enough that the statute includes some requirement of specific intent, such as the intent to deprive a person of property, or even the intent to cause injury. To qualify as a crime of violence under the "force" or "elements" clause, the statute must have as a required element the intent to use strong physical force.

Applying these standards to Mr. Johnson's case requires vacatur of both his convictions under § 924(c) and the corresponding death sentences he received as a result of his convictions for his crimes of violence constituting intentional killing under 21 U.S.C. § 848(e)(1). As detailed below, the predicate offenses for which Mr. Johnson was convicted categorically fail to qualify as crimes of violence under § 924(c)'s force clause because intentional killing under this statutory provision may be perpetrated without the use of violent or physical force. Mr.

15

Johnson's other convictions for murder, maiming, and assault also fall short of qualifying as crimes of violence for identical reasons.

### 2. The federal homicide statutes do not require the use or threatened use of violent physical force.

Section 848(e)(1)(A) establishes the death penalty as one of the penalties for a murder committed in the course of a continuing criminal enterprise. Specifically, § 848(e)(1)(A) states:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death[.]

Similarly, 18 U.S.C. § 1959 prohibits murder in connection with a RICO conspiracy under specific circumstances. Neither of these homicide offenses categorically require the use of violent physical force to sustain a conviction and neither can satisfy § 924(c)'s force clause.

Intentional homicide can be committed without any physical touching of the victim, much less the use of any force. "[H]uman experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient." *Chrzanoski v. Ashcroft,* 327 F.3d 188, 195-96 (2d Cir. 2003) (analyzing Connecticut's third degree assault statute that could criminalize an "injury caused not by physical force, but by guile, deception, or even deliberate omission . . . [by the] placement of a tranquilizer in the victim's drink[]" (citation omitted)). Other examples of intentional killings without force are locking someone in a hot car, withholding food from them, or poisoning them. *See Torres-Miguel*, 701 F.3d at 169-70 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 277 (5th Cir. 2010); *United States v. Perez-Vargas,* 414 F.3d 1282, 1286 (10th Cir. 2005) (analyzing Colorado's third-degree assault with a deadly weapon statute

16

that could be violated by exposing someone to hazardous chemicals). These intentional acts—withholding medication or food, leaving someone locked in a dangerous place, or poisoning—by their nature can be committed surreptitiously through deceit or by acts that involve no physical contact with or force against the victim.

The Fourth Circuit's decision in *Torres-Miguel* is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "death or serious injury" does not *necessarily* require the use or threatened use of physical force, let alone "violent force." 701 F.3d at 168. The issue in *Torres-Miguel* was whether the defendant's prior conviction for the California crime of willfully threatening to commit a crime which "*will result in death or great bodily injury to another*" qualified as a violent felony under a force clause materially indistinguishable from that in § 924(c). *Id.* at 167 (citing Cal. Penal Code § 422(a)). The court held, without qualification, that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the . . . definition of crime of violence." *Id*. at 168. "[A] crime may *result* in death or serious injury," the court explained, "without involving *use* of physical force." *Id.*

Referencing decisions from various federal courts of appeals, the *Torres-Miguel* court identified many possible ways in which physical injury—even death—may result without the use or threatened use of "violent force." *Id.* at 168-69 (collecting cases). "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Id.* (citing *Cruz-Rodriguez,* 625 F.3d at 276 (5th Cir. 2010)).

The reasoning in these cases applies equally to intentional killing under § 848(e)(1)(A) and murder under § 1959 because the statutes fail to require the use of physical force, and

17

certainly do not require the "violent force" that is a prerequisite to constitutional application of the force clause. *See United States v. Rice,* 813 F.3d 704, 707 (8th Cir. 2016) (Kelly, J., dissenting) (citing *Johnson,* 559 U.S. at 139).

Thus, because "the full range of conduct" covered by § 848(e)(1)(A) and § 1959 do not require "violent force," they categorically cannot qualify as "crimes of violence" under § 924(c)(3)'s force clause. *See Torres-Miguel,* 701 F.3d at 171.  And it makes no difference that the possibility of violating the homicide statutes without the use or threat of violent force may be slim.  Because that possibility exists, this Court cannot, as a matter of law, find that § 848(e)(1)(A) intentional killing and § 1959 murder are "crimes of violence."

**3. Section 848(e)(1)(A) fails to satisfy the force clause because it authorizes the death penalty for an intentional killing committed by a person other than the defendant.**

Section 848(e)(1)(A) permits a jury to sentence a member of a CCE to death even if the accused does not intentionally take the life of the victim him or herself.  Instead, death is an available punishment under this provision if "[a]ny person engaging in or working in furtherance of a continuing criminal enterprise . . . counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results[.]"  The murders for which Corey Johnson was convicted that served as predicate violent felonies for his convictions under § 924(c), therefore, categorically, do not satisfy the force clause of that statute.

Causing another person participating in a continuing criminal enterprise to commit an intentional killing—whether through an agreement, through some sort of inducement, or by way of an order or command—simply does not meet the force requirement necessary for a § 924(c) conviction.  This type of behavior is the equivalent of a conspiracy, because it does not require the actual violent physical force to be committed by the individual charged with the § 924(c)

18

offense, but instead involves persuading in some fashion another person to commit the murder. Conspiracies never qualify as "crimes of violence" under the force clause, no matter what the object is of the conspiracy. *See United States v. Melvin*, No. 13-4857, slip op. at 2-3 (4th Cir. Oct. 26, 2015) (per curiam) (finding conspiracy to commit robbery with a dangerous weapon not a violent felony); *United States v. Gonzalez-Ruiz*, 794 F.3d 832 (7th Cir. 2015) (finding conspiracy to commit armed robbery not violent felony); *United States v. Luong*, 2016 WL 1588495 (E.D. Cal. Apr. 20, 2016) (conspiracy to commit Hobbs Act robbery not 924(c) crime of violence); *United States v. Edmundson*, __ F. Supp. 3d__ 2015 WL 9311983 (D. Md. Dec. 30, 2015) (same).[5]

The jury in Corey Johnson's case was expressly instructed that it could convict him of the § 848 murders if it found that "Cory [sic] Johnson . . . . while engaged in or working in furtherance of a Continuing Criminal Enterprise, intentionally killed, *counseled, commanded, induced, procured, or caused the intentional killing of certain individuals*." (emphasis added). Trial Tr. vol. 16, 3215, Feb. 2, 1993. Similarly, nowhere on the verdict form that the jury used to record its verdicts related to Corey Johnson was the jury asked to find whether Corey Johnson killed any of the victims himself; instead the verdict form was couched in passive language, as this representative example of the verdict form related to Count 8 shows:

> Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

*    *    *

---

[5] Cases before the Supreme Court's 2015 *Johnson* decision also held conspiracy charges did not meet the force requirement, *See United States v. White*, 571 F.3d 365 (4th Cir. 2009); *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007); *United States v. Gore*, 636 F.3d 728 (5th Cir. 2011); *United States v. Chandler*, 743 F.3d 648 (9th Cir. 2014) (implies conspiracy does not satisfy force clause or enumerated offenses).

If you indicated that a Continuing Criminal Enterprise <u>did</u> exist, you must now determine whether defendant CORY [sic] JOHNSON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below.

\*    \*    \*

Count 8: Killing of Peyton Maurice Johnson while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

\*    \*    \*

_____
(Guilty or Not Guilty)

Verdict at 1-2.

Because § 848 permits a murder conviction based on the intentional killing by a person other than the defendant—if encouraged, directed, or in some other way, caused by the defendant—it cannot qualify as a "crime of violence" under § 924(c)'s force clause.[6]

**4. Section 1959(a) fails to satisfy the force clause because it encompasses felony murder that can be committed by another person and felony murders, maimings, and assaults without the use of violent physical force.**

Like convictions for intentional killings covered by § 848, murder convictions pursuant to § 1959(a) do not require that the accused actually commit the homicide. In addition, murder under this statute can encompass felony murder based on the commission of underlying felonies, which themselves do not necessarily require the use of violent physical force, and maiming and

_____

[6] Neither 21 U.S.C. § 848 nor 18 U.S.C. § 1959 are divisible statutes and, therefore, application of the categorical approach requires finding that these provisions fail to require violent or physical force for a defendant to be convicted of an § 848 intentional killing or a § 1959 murder, maiming, or assault. *See Taylor v. United States,* 495 U.S. 575, 602 (1990) (modified categorical approach therefore applies to only "a narrow range of cases"—those involving statutes encapsulating separate proscriptions, at least one of which constitutes a crime of violence); *Johnson v. United States*, 559 U.S. 133 (2010)*; United States v. Del Carmen Gomez,* 690 F.3d 194 (4th Cir. 2012) (Maryland child abuse statute not divisible). However, even under the modified categorical approach, a murder conviction under § 848 would fail to satisfy the force clause because the jury instructions and verdict form permitted the jury to find that someone else committed the § 848 murders for which it convicted Corey Johnson.

20

assault similarly can be committed without force.  For these reasons, § 1959(a) does not satisfy the categorical approach and Corey Johnson's convictions for the § 1959 offenses cannot qualify as crimes of violence under § 924(c)'s force clause.

Section 1959(a) convictions include conduct that is encompassed by the doctrine of felony murder.  *United States v. Palacios*, 1999 U.S. App. LEXIS 5206 *5-6 (2nd Cir. Mar. 4, 1999).  In fact, § 1959(a) convictions for murder can be sustained even when the accused did not participate in the killing or intend to kill.  Id. at *6-7 ("Edwin need not have intended to kill Vulfson or even have participated in his killing; so long as the victim was killed 'in the course of and in furtherance of' the robbery").  Thus, for the same reasons why § 848 intentional killings fail the categorical approach because they encompass acts committed by others, as explained in section B.3. above, § 1959(a) too fails that categorical analysis due to the felony murder doctrine.

Moreover, the fact that murders under § 1959(a) may be committed in the perpetration of, or an attempt to perpetrate, felony offenses is an additional reason why § 1959(a) murders do not constitute crimes of violence pursuant to § 924(c).  This is true because the underlying felonies for first degree felony murder do not necessarily require the use or threatened use of violent physical force.  For example, first-degree murder may be committed in the attempt to perpetrate a robbery, which categorically fails to qualify as a "violent felony" under the ACCA "force" clause because robbery does not always require violent touching.  *See, e.g. United States  v. Gardner*, No. 14-4533 (4th Cir. May 18, 2016).  This is true for two independent reasons: (1) the offense can be committed by putting someone in fear of injury to *property* rather than violent physical force against a person, and (2) the offense can also be accomplished by nothing more

21

than a larceny combined with *de minimis* force, i.e., offensive touching or putting someone in fear of an offensive touching, combined with an assault).[7]

Maiming and assault under § 1959(a) fail for exactly the same reason. Although there have been federal prosecutions for maiming offenses, there do not appear to be reported published decisions analyzing the elements of maiming under § 1959(a).[8] However, maiming is a form of assault that does not require actual violent physical force. *See United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013). Moreover, the intent to maim element does not convert assault into a "violent felony" because it can be accomplished merely by causing *injury* rather than the use of strong physical force. The Fourth Circuit's decision in *Torres-Miguel*, 701 F.3d at 168, is directly on point. There, the Fourth Circuit unequivocally held that the threat of *any physical injury,* even "serious bodily injury or *death,*" does not necessarily require the use of physical force – let alone "violent force."

Because a § 1959(a) murder does not require the use or threatened use of violent physical force, but can be committed by causing death during the commission of a felony, and because maiming and assault under § 1959(a) also do not require the use of violent force, they do not qualify as crimes of violence under § 924(c)'s force clause.

---

[7] *See, e.g., Giles v. State*, 8 Md. App. 721, 723 (1970) (holding that Maryland robbery can be accomplished simply by putting someone in fear of "injury to the person *or to the property, as for example, a threat to burn down a house*." (emphasis added)); *see also Snowden v. State*, 321 Md. 612, 618 (1991) (explaining that Maryland robbery is a larceny combined with an assault).

[8] The closest federal offense appears to be 18 U.S.C. § 114, which involves maiming within maritime and territorial jurisdiction. In relevant part, that statute states that : "Whoever . . . with intent to torture . . . maim, or disfigure, cuts, bites, or slits the nose, ear, or lip, or cuts out or disables the tongue, or puts out or destroys an eye, or cuts off or disables a limb or any member of another person. . ." shall face imprisonment.

22

**II. Mr. Johnson is entitled to relief under 28 U.S.C. § 2255 because his claim under *Johnson* is cognizable, timely, and satisfies the successive petition requirements of § 2255(h)(2).**

**A. Mr. Johnson's claim is cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. Mr. Johnson's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief under § 2255(a).

First, for all the reasons explained above, Mr. Johnson's convictions on the § 924(c) charges violate due process because they depended on the unconstitutionally vague residual clause. Second, as also explained above, 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1959(a) categorically cannot satisfy § 924(c)'s force clause. Mr. Johnson's indictment therefore failed to state an offense under § 924(c), and Mr. Johnson now stands convicted of offenses that are no longer criminal. His convictions, therefore, violate the laws of the United States and result in a fundamental miscarriage of justice. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255").

Third, Mr. Johnson's convictions exceed this Court's jurisdiction because not only did the indictment fail to state § 924(c) offenses, but also it affirmatively alleged conduct that is outside that statute's reach. That is, Counts 9, 12, 15, 20 and 26 of the indictment alleged that Mr. Johnson used or carried a firearm during or in relation to crimes of violence or a drug

23

trafficking offenses. Because the crimes of violence alleged in the indictment, including intentional killing under § 848 and murder, maiming, and assault under § 1959, as discussed above, categorically cannot qualify as "crimes of violence" for purposes of § 924(c), this Court had no jurisdiction to try Mr. Johnson on those offenses. In turn, § 924(c) convictions can never be sustained based on the underlying homicide, maiming, and assault offenses pursuant to § 848 and § 1959, no matter what the facts are.

Simply put, Counts 9, 12, 15, 20, and 26 altogether fail to state § 924(c) offenses. Mr. Johnson's conviction on those counts therefore are a legal nullity that were entered in excess of this Court's jurisdiction, and they must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1352 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute" (citation omitted)); *United States v. Barboa,* 777 F.2d 1420, 1423 n.3 (10th Cir. 1985).

### B.    Mr. Johnson's motion for relief is timely.

Section 2255(f) requires that § 2255 motions be filed within a one-year limitations period. That period runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Among these triggers is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]" *Id.,* § 2255(f)(3).

The Supreme Court decided *Johnson* on June 26, 2015. Corey Johnson has filed this application within one year of that date. Further, on April 18, 2016, the Supreme Court expressly made *Johnson*'s new rule retroactively applicable to cases on collateral review. *Welch v. United States,* 136 S. Ct. 1257, 1265 (2016). This motion therefore is timely filed.

**C.**     **Mr. Johnson's successive § 2255 motion satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Johnson* announced a new, previously unavailable rule of constitutional law, and the Supreme Court has made *Johnson* retroactive to cases on collateral review.**

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. *See* 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id*.; *see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Johnson files this successive § 2255 motion after having requested authorization to do so from the Fourth Circuit under § 2255(h)(2). Because Mr. Johnson has made a *prima facie* showing that he has satisfied § 2255(h)(2), the Fourth Circuit's certification should be forthcoming. *See In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003). Mr. Johnson can do more than make out a *prima facie* showing, however. He can demonstrate conclusively that his motion meets all the requirements of § 2255(h)(2). To do so, he need only point to the Supreme Court's recent decision in *Welch*. There, the Supreme Court itself held that *Johnson* announced a new constitutional rule, that this rule was previously unavailable, and that *Johnson*'s rule is substantive and applies retroactively to cases on collateral review. *Welch,* 136 S. Ct. at 1265.

25

**III.    Mr. Johnson's invalid § 924(c) convictions also invalidate his death sentences on the convictions upon which the jury returned sentences of death.**

Mr. Johnson was convicted of committing seven separate intentional killings for which the jury returned verdicts pursuant to 21 U.S.C. § 848(e)(1)(A).[9]  The invalidation of Mr. Johnson's § 924(c) convictions requires that he be resentenced on all of the other counts which contributed to the jury's death sentences.

When a defendant has been convicted and sentenced on multiple charged offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid offense.  *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986).  The Eighth Circuit has explained that "the critical issue" in this inquiry "is whether the sentence imposed [on the valid count] might have been different if the sentencing judge had known at the time of the sentencing that the . . . conviction [on another count] was invalid." *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973) (per curiam).

This principle applies with equal force in the case of jury sentencing.  The record in Mr. Johnson's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) counts influenced the jury's decision to sentence him to death on the § 848 counts.  Each of the § 924(c) counts in the indictment references § 848.  More importantly, immediately after being instructed on the meaning of a "crime of violence" under § 924(c) for the use of a firearm in relation to any crime of violence or drug trafficking offense, Corey Johnson's jury was instructed that:

> The offenses alleged in Counts Three, Four, Five, Seven, Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-

---

[9] The jury also convicted Corey Johnson of murder pursuant to 18 U.S.C. § 1959 on Counts 10, 13, 14, 21, 22, 23, 24, 25, 27, and 28.

26

two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty, Thirty-one, and Thirty-three are crimes of violence or drug trafficking crimes.[10]

Of those offenses, Counts 8, 11, 17, 18, 19, 24, and 25 allege violations of § 848(e)(1)(A), which are the charges on which the jury returned death sentences for Corey Johnson. And Counts 10, 13, 14, 21, 22, 23, 27, 28, 29, and 30 are the other charges on which the jury convicted Corey Johnson of crimes of violence pursuant to § 1959. Yet none of those crimes actually constitute crimes of violence for purposes of § 924(c).

This starkly shows that Mr. Johnson's jury was allowed to consider not just that he participated in murders, but that those murders and other assaults were "crimes of violence" for purposes of § 924(c). The jury was told that those "crimes of violence" were so egregious that using a gun in connection with them amounted to separate felonies. And yet, those so-called "crimes of violence" were not crimes at all, and should never have been presented to the jury, during either stage of Mr. Johnson's trial. It is inconceivable that the cumulative weight of the multiple § 924(c) crimes of violence upon which the jury was instructed to deliberate, none of which actually constituted a crime, did not impact the jury's decision to impose a sentence of death on the crimes of violence constituting the § 848 murders.

Given the likelihood that the invalid convictions influenced the jury's sentencing verdict on the remaining counts, this Court must order that Mr. Johnson be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida,* 136 S. Ct. 616 (2016), the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. *Hurst,* 136 S. Ct. at 624. The Court was unequivocal: "The Sixth

---

[10] Trial Tr. vol. 16, 3223, Feb. 2, 1993.

Amendment protects a defendant's right to an impartial jury.  This right required Florida to base [the defendant's] death sentence on a jury's verdict, not a judge's fact finding." *Id.*

After *Hurst,* any death sentence rendered by a court is unconstitutional.  An appellate or post-conviction court that finds non-structural error in the defendant's death sentence therefore must remand for a new penalty phase before a jury.  It may not engage in post hoc reweighing, or otherwise make its own determination about whether the defendant deserves a death sentence.  To the extent any prior Supreme Court decisions, such as *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overruled them.

What is more, given the unparalleled need for reliability in capital sentencing, allowing Mr. Johnson's death sentence on the remaining counts to stand despite the jury's exposure to the invalid § 924(c) counts and their prejudicial elements would implicate the Eighth Amendment.  The Supreme Court's decision in *Johnson v. Mississippi,* 486 U.S. 578 (1988), provides an instructive analogy.  There, the Court held that when a prior conviction used as aggravation in support of a death sentence has subsequently been overturned, the defendant's death sentence violates the Eighth Amendment.  As the Court explained, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Id.* at 584 (internal quotation marks omitted) (citations omitted).

Because the petitioner's prior conviction in *Johnson v. Mississippi* was invalid, the Court deemed it "apparent that the [prior] conviction provided no legitimate support for the death

28

sentence imposed on petitioner." *Id.* at 586. Equally apparent, the Court said, was "that the use of that conviction in the sentencing hearing was prejudicial." *Id.*

And while the prosecutor in *Johnson v. Mississippi* had repeatedly pointed to the prior conviction in his closing argument, the Supreme Court said the now-voided conviction's use as aggravation would have violated the Eighth Amendment no matter what. "Even without that express argument, there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* (quoting *Gardner v. Florida,* 430 U.S. 349, 359 (1977)).

The same principles apply here. The unconstitutional § 924(c) convictions had a profoundly prejudicial impact on Mr. Johnson's case as a whole, and undermines confidence in his death sentences on the remaining counts.

Mr. Johnson likely was prejudiced even before his case ever reached the jury. When the Department of Justice considered whether to authorize the death penalty against Mr. Johnson, it was presented with an indictment alleging five separate § 924(c) counts and seven capital offenses for crimes of violence, including federal intentional killing, plus additional murder, maiming, and assault offenses, all of which fail the Supreme Court's categorical approach to the force element of those crimes. The Department's capital-case review process was skewed by the presence of the unconstitutional charges, just as the jury's sentencing decision was skewed in *Johnson v. Mississippi.*

This Court should vacate Mr. Johnson's sentence in its entirety and order that he be resentenced before a jury on only the remaining counts after his § 924(c) convictions are vacated.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Johnson respectfully asks this Court to vacate his convictions and sentences on Counts 9, 12, 15, 20, and 26, the invalid charges under 18 U.S.C. § 924(c). Mr. Johnson further requests the following relief:

a)      That this Court vacate his death sentences on Counts 8, 11, 17, 18, 19, 24, and 25 and remand this case for a new penalty phase trial on those counts.

b)      That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

c)      That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that he be personally present at such conference.

d)      Any other relief that may be necessary to correct Mr. Johnson's invalid conviction and sentence.

Dated: May 19, 2016               Respectfully submitted,

Darren M. Welch
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7804
darren.welch@skadden.com

Donald P. Salzman*
Skadden Arps Slate Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
(202) 371-7983
donald.salzman@skadden.com
*pro hac vice motion to be filed

*Counsel for Corey Johnson*

30