# APPENDIX 4B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| CORY JOHNSON, | ) |
| | ) |
| Petitioner, | )   Crim. No. 3:92CR68 |
| v. | ) |
| | )      Civil No. 3:97CV895 |
| SAMUEL PRUETT, WARDEN, | ) |
| | ) |
| Respondent. | ) |

FIRST AMENDMENT TO INITIAL PETITION FOR WRIT OF

HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION

<u>2255 AND TO MEMORANDUM IN SUPPORT OF PETITION</u>

Petitioner, Cory Johnson, a federal prisoner now in the custody of the United States, currently held at Sussex State Prison, Waverly, Virginia, and under sentence of death, hereby amends his previously filed petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2255 and memorandum in support thereof.  Respondent has not yet filed a responsive pleading[1].

Petitioner asserts the various grounds for granting a writ of habeas corpus both individually and cumulatively.  Because of the cumulative nature of the alleged errors and

---

[1] Counsel for Respondent was granted until September 29, 1998, to file his response.  Petitioner has no objection to an extension of time to file Respondent's answer in view of this Amendment.

1

the prejudice resulting therefrom, Petitioner hereby incorporates by reference in every paragraph or subparagraph of his initial petition, memorandum in support, and this first amendment every other paragraph or subparagraph of his initial petition, memorandum in support, and this amendment, and any subsequent amendment thereto.

I.    The Subsequent Trial Of *Johnson's Co-defendant, Vernon Lance Thomas*, Revealed Additional Facts Supporting The Claims Set <u>Forth In Johnson's Initial Petition.</u>

Vernon Lance Thomas was indicted with Johnson. JA 73. His case was severed, and he was tried in this Court after Johnson's trial. The trial transcript for that related case, *United States v. Vernon Lance Thomas*, provides additional evidence supporting Johnson's Petition on a number of claims.

The Government's two star witnesses against Johnson, Priscilla Green and Jerry Gaiters, both testified in *Thomas,* and their testimony is the focal point of the analysis that follows.

A.    Ms. Green's Testimony In *Thomas* Reveals That She Lied In Johnson's Trial, And That <u>Johnson Was Not A CCE Supervisor.</u>

The facts set forth below amend and supplement Johnson's Claim II, the legal insufficiency of the evidence on the supervision element, Claim III, actual innocence of the CCE convictions and subsequent death sentence, and Claim V, prosecutorial misconduct throughout Johnson's trial.

<u>Background</u>.    Priscilla Green provided dramatic, damning evidence against Johnson in connection with his CCE murder convictions. She had been crippled by gun

2

shots. In essence, Green claimed in her testimony that those shots were fired by Johnson and that she saw Johnson in the act of executing other people. Tr. 2546, 2557-59. She was surely the Government's most sympathetic and damaging trial witness against Johnson.

Ms. Green lied at Johnson's trial. As a threshold matter, Ms. Green's testimony in *Thomas* proves that she lied in Johnson's trial. After giving her damning testimony against Johnson, defense counsel attempted a cross-examination. During cross-examination at Johnson's trial, Ms. Green expressly denied that she had ever sold cocaine. Tr. 2546. This testimony was false, as demonstrated by her testimony in *Thomas*, in which she admitted that she had sold cocaine. *United States v. Vernon Lance Thomas*, Trial Tr. 421-2.

Because Green lied during Johnson's trial, Johnson was denied the opportunity to effectively challenge her credibility on a critical issue--her involvement in drug dealing. Ms. Green's false testimony on this point ultimately may have affected the sentence Johnson received. Had the jurors known that Green voluntarily engaged in the same criminal activities that Johnson was charged with, they may have been less inclined to impose death. This information amends and supplements Johnson's Claims II and III, alleging insufficient proof, innocence of the CCE convictions and of the death sentence.

Thomas, not Johnson, was the principal supervisor of drug activities. Beyond revealing her false testimony against Johnson, Ms. Green's testimony in *Thomas* demonstrated that Lance Thomas, not Johnson, was the principal supervisor of the drug activities involved. Specifically, Green testified that Thomas was "mostly" the head man,

3

because "he mostly controlled the drugs.... [Thomas] controlled the drugs because he had it bagged up and gave it out to the people to sell." *Thomas*, Trial Tr. 424-5.

Ms. Green's testimony during *Thomas* (like Gaiters' testimony in the Johnson trial that persons other than Johnson "was like the boss. . . . [t]hey ran things")  supports Johnson's claim of actual innocence -- *i.e.*, that the CCE supervisors were persons other than Johnson.   Had she given truthful testimony concerning Thomas's leadership during Johnson's case, when combined with Gaiters' testimony concerning the leadership by others, her testimony would have substantially strengthened Johnson's defense (and weakened the government's case) and enabled a jury to conclude either that Johnson was not a CCE supervisor or, even if he was, that he was not sufficiently responsible to support a death sentence.  Green's later testimony amends and supplements Johnson's Claims II and III.

Prosecutorial misconduct.   Ms. Green's testimony supports a claim of prosecutorial misconduct in two respects.  It is difficult to imagine that the Government did not know (i) that Ms. Green sold drugs and that she testified falsely in Johnson's trial when she denied selling drugs; or (ii) that she would ultimately put most of the responsibility for supervision of drug activities on Thomas.  Nevertheless, this information was not revealed to Johnson's defense counsel or to the jury during Johnson's trial.

A conviction obtained through the use of evidence the prosecutor knows is false violates due process and must fail under the Fifth and Fourteenth Amendments.  Napue v. Illinois, 360 U.S. 264, 269 (1959); Kyles v. Whitley, 115 S. Ct. 1555 (1995).  Under such circumstances, the conviction must be set aside if there is any reasonable likelihood

4

that the false evidence could have affected the judgment of the jury. <u>United States v. Bagley</u>, 473 U.S. 667, 678-80 & n. 9 (1985); <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)(citing <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)); <u>Mooney v. Holohan</u>, 294 U.S. 103 (1935). Where it is established that the government knowingly permitted the introduction of false testimony, reversal is virtually automatic." <u>United States v. Stofsky</u>, 527 F.2d 237, 243 (2d Cir. 1975), <u>cert. denied</u>, 429 U.S. 819 (1976)(citing <u>Napue</u>, 360 U.S. at 269); <u>see</u> <u>also</u> <u>Miller v. Pate</u>, 386 U.S. 1, 7 (1967). Thus, Green's subsequent testimony and information provides grounds to amend and supplement Johnson's Claim V, alleging prosecutorial misconduct in the presentation of her testimony.

Furthermore, the government presented and argued two different accounts of the CCE supervision activities, the first at Johnson's trial and the second at Thomas' trial. The government's shifting position in its presentation of testimony and argument made Johnson's trial and conviction fundamentally unfair and produced a result that cannot be relied on. The principles governing the prosecution's responsibility in such instances were stated by the Second Circuit Court of Appeals in <u>United States v. GAF Corp.</u>, 928 F.2d 1253, 1260 (2d Cir. 1991):

> Although the government is not bound by what it previously has claimed its proof will show any more than a party which amends its complaint is bound by its prior claims, <u>the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims.</u> Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts. <u>See</u> [United States v.] McKeon, 738 F.2d [26] at 31 [2d Cir. 1984].
>                              *     *     *
> . . . [I]f the government chooses to change its strategy at successive trials, and contradict its previous theories of the case and version of the historical facts, the jury is entitled to be aware of what the government has previously

5

claimed, and accord whatever weight it deems appropriate to such information.  There is merit still in that "rough and ready" view of the adversary process which leaves parties to bear the consequences of their own acts.  [928 F.2d at 1262].

The prosecutor's improper manipulation of material evidence at two separate murder trials was the basis for granting the writ in Troedel v. Wainwright, 667 F. Supp.1456 (S.D. Fla. 1986), aff'd. 828 F.2d 670 (11th Cir. 1987).  In the trial of defendant Hawkins, the prosecutor presented expert testimony that either Hawkins or Troedel had fired the murder weapon or had been close when a weapon was fired.  The prosecutor also presented testimony of a witness, Tillman, who stated that on the night of the murder Hawkins had asked for a gun and said he wanted to shoot two men who owed him money.  On redirect, the prosecutor bolstered Tillman's testimony.  At Troedel's trial, the same prosecutors called Tillman, who repeated his prior testimony.  On summation the prosecutors distanced themselves from his account, whereas in the prior trial they had embraced it.  Furthermore, at Troedel's trial the expert witness now testified that Troedel had fired the murder weapon and that Hawkins could have been contaminated by proximity to the weapon.  At a federal evidentiary hearing, the expert witness testified that there was no scientific basis for concluding that Troedel had fired the murder weapon. The district court concluded that the prosecutor presented misleading testimony, knew that it was misleading, and that the testimony was material since it could have affected the judgment of the jury.  As a result, Troedel's trial was "rendered fundamentally unfair by the State's use of misleading testimony." Id. at 1460.  The Court of Appeals affirmed the granting of the writ. Accord United States v. Udechukwu, 11 F.3d 1101, 1105-06 (1st Cir. 1993)(improper conduct for prosecutor to imply or suggest to jury the opposite of

6

what he knows to be true).

The prosecutors in Johnson's trial engaged in the same improper behavior. The prosecution witness Green denied any drug dealing in Johnson's trial but admitted to that illegal activity at Thomas's trial. The same witness named Thomas, not Johnson, as the principal supervisor of the drug activities charged in the indictment. Johnson's jurors never heard this testimony from Green. The testimony was material, certainly would have affected the judgment of Johnson's jury, and Johnson's trial was rendered fundamentally unfair and the results unreliable by the government's manipulation of the evidence. See Miller v. Pate, 386 U.S. 1 (1967). This evidence provides an additional claim for relief based on prosecutorial misconduct, Johnson's Claim V.

The alleged supervisees were mere resellers of drugs.    Johnson's opening brief at Part II argues extensively that the Government's evidence and argument concerning CCE supervisees consists principally of mere drug resellers, who are not capable of being CCE supervisees. Ms. Green's testimony in *Thomas* bolsters this argument. There, she testified that the activities of four so-called CCE supervisees -- herself, Curt Thorne, "Papoose" (Robert Davis), and Mousey Armstrong -- were limited to selling drugs. *Thomas* Tr. 424. This information amends and supplements Johnson's Claims II and III set forth in his Initial Petition.

B.    Gaiters' Testimony In *Thomas* Reveals That He Lied In The Trial
Against Johnson And That Johnson Was Not A CCE Supervisor

Background. Jerry Gaiters was a less sympathetic witness than Ms. Green, but his testimony was similarly essential to Johnson's CCE murder convictions. Gaiters

7

testified in both cases pursuant to a plea agreement. Pursuant to that agreement, he pled guilty to conspiracy and multiple counts of murder in furtherance of a CCE. Tr. 2309-10. Gaiters testified that he saw Johnson shoot Mousey Armstrong and Bobby Long (both of which were CCE murders for which Johnson received the death sentence). Tr. 2343-47. He also gave testimony concerning specific facts relating to the murder of Mousey Armstrong, which the Government relied upon to demonstrate that he was one of Johnson's CCE supervisees.

Gaiters lied at Johnson's trial. Johnson was a key witness for the Government, claiming to be an eyewitness against Johnson for the capital murder of Mousey Armstrong and Bobby Long. However, it is apparent from the *Thomas* trial that Gaiters did not testify truthfully against Johnson. As discussed in Johnson's opening brief at page 60, Gaiters testified against Johnson that he was directed by Johnson to get Mousey Armstrong out of her house so Johnson could shoot her; and that Gaiter's trial testimony conflicted with his grand jury testimony. During the *Thomas* trial, however, Gaiters testified to an entirely different story: *that he did not know that Johnson was going to hurt or kill Ms. Armstrong. Thomas*, Trial Tr. 569.

Thus, Gaiters has now testified under oath three times concerning his role in the Mousey Armstrong murder, and he has told three different stories. His inability to tell the same story twice demonstrates that his testimony against Johnson is likely a fabrication.

8

At minimum, it casts substantial doubt on his veracity and these contradictions were not presented to Johnson's jury.  This information amends and supplements Johnson's Claims II and III, alleging insufficient proof, innocence of the CCE convictions and of the death sentence.

For the reasons set forth above when discussing Green's inconsistent testimony, Gaiters' testimony strongly suggests that the Government knew that his testimony at Johnson's trial was false.  Thus, Gaiters' testimony at Thomas's trial supports an additional claim of prosecutorial misconduct, Claim V in the Initial Petition.

<u>Johnson was not Gaiters' CCE supervisor.</u>  Gaiters' testimony against Johnson concerning the murder of Mousey Armstrong was critical from another standpoint: as discussed in Johnson's opening brief at page 60, the Government had relied upon his testimony as the sole basis to claim that he was a CCE supervisee of Johnson.  Gaiters' most recent story that he did not know that Johnson was going to hurt or kill Armstrong, as he testified during the *Thomas* trial, could not possibly support the Government's argument that he was a CCE supervisee due to his actions in concert with Johnson relating to the Armstrong murder.  This information amends and supplements Johnson's Claims II and III in his Initial Petition.

II.    <u>Prosecutorial Misconduct In Connection With The Terms "Worker" and "Partner"</u>

Johnson's opening brief at page 141 explains the Government's practice during the trial of having its witnesses use the misleading and ambiguous terms "worker" and "partner" to establish the element of CCE supervision.  During Johnson's trial, the

<div align="center">9</div>

Government repeatedly attempted to demonstrate to the jury that prosecutors had not suggested these terms to its witnesses. For example, Government witness Hussone Jones testified as follows:

> Q:     Now, in anticipation of your testimony has anyone told you to use the term worker or partner?
>
> A:     No.

Tr. 1546. The Government attempted on at least one other occasion during the trial to reinforce the notion that it did not suggest these terms to its witness. Tr. 2108.[2]

Various excerpts of grand jury testimony, however, show that the terms were suggested by the Government through leading questions during grand jury proceedings. For example, Hussone Jones -- the very witness referred to in the preceding paragraph -- did *not* use these terms during his grand jury testimony. These terms were used by the Government in leading questions, and were accepted by Jones in his answers. *See* Exhibit 11, attached to Johnson's opening brief. If the Government then showed Jones his grand jury testimony prior to his trial testimony, then it would appear that the Government knowingly planted these terms in his mind for use at trial. Likewise, during grand jury testimony, the Government suggested these terms to other Government witnesses. *See*, e.g., Exhibit 12, attached to Johnson's opening brief. This information amends and supplements Johnson's Claim V, alleging prosecutorial misconduct.

III.    The Prosecutors Violated 18 U.S.C. Section 201(c)(2) When Obtaining and Presenting The Testimony Of Several Cooperating Witnesses At Johnson's Trial.

_____

[2]    This was during the testimony of Stanley Smithers. As discussed in Johnson's opening brief at 52-53, Smithers testified that he used that term to mean a drug reseller.

10

Defense Counsel Failed To <u>Object And Were Ineffective Under Strickland v. Washington.</u>

The prosecutors gave and/or promised favorable treatment to several key prosecution witnesses in exchange for their testimony at Johnson's trial. In doing so, the prosecutors violated 18 U.S.C. Section 201(c)(2) which states:

> <u>Section 201.</u> <u>Bribery of public officials and witnesses</u>
>
> *    *    *
>
> (c) Whoever --
>
>> (2) directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either house or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;
>
> *    *    *
>
> shall be fined under this title or imprisoned for not more than two years, or both.

The statute explicitly prohibits attaching any promise, offer, or gift to a witness's testimony in any legal proceeding. There can be no <u>quid</u> <u>pro</u> <u>quo</u> for testimony, including the testimony of government witnesses. Nor can a promise be motivated by a witness's testimony.

The prosecutors violated this statute when presenting the testimony of several witnesses who were central to the case against Johnson. Greg Scott testified pursuant to an agreement with the government. He stated that in exchange for his testimony the government "will speak up for me in behalf of somehow I'll get a deal," i.e., "to reduce my sentence." JA 1727-28. Scott was promised government assistance at his upcoming

11

sentencing.  Robert Davis testified that he had been placed in the Witness Protection Program, received lodging, and no prosecutions had been brought against him as conditions of his testimony.  JA 2765, 2784.  Dennis Moody testified that the government had promised to place him in the Witness Protection Program only after he had given testimony at Johnson's trial.  JA 2860-62.  The connection between testimony and promised benefit could not be clearer.  Stanley Smithers testified that as a condition of his testimony he too had been placed in the Witness Protection Program.  JA 2930.  Valerie Butler testified that she was placed in the Witness Protection Program (JA 3514) and had never been charged for criminal offenses she committed (JA 3566).  Under these conditions, Butler testified for the government.

Sterling Hardy, who had been charged in the indictment with Johnson, entered into a plea agreement with the government.  His agreement provided that all state charges would be dropped (JA 3045) and that the government would make a motion for a sentence reduction after he had testified at Johnson's trial.  JA 3056-60.  Jerry Gaiters, charged as a co-defendant, also entered a plea in this case and like Hardy was awaiting sentence.  In exchange for his testimony, the government had agreed to recommend a sentence reduction.  "When it is time to come do sentencing, they will talk to see if I can get a lesser sentence." JA 3140.  "You are cooperating because you don't want to get the maximum penalty; is that correct?  [Gaiters]:  Right."  JA 3202.

The prosecutors' actions were a clear violation of 18 U.S.C. section 201(c)(2).  The testimony of these witnesses should have been prohibited.  See United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), vacated and reh. en banc granted, 144 F.3d 1361 (10th Cir. July 10, 1998).  For the reasons set forth in Singleton, adopted in full and

12

incorporated here, Johnson was denied a fair trial and due process in violation of his rights under the Fifth and Sixth Amendments.   Therefore, Johnson amends and supplements his Initial Petition and Memorandum to add this violation by the prosecution as Claim V (M), alleging prosecutorial misconduct.  The writ must be granted on this basis, and the convictions and sentences vacated.

In addition, Johnson amends and supplements his Initial Petition to add a claim of ineffective assistance of counsel, Claim IV (A. 9).  Based on the foregoing, Johnson alleges that defense counsel rendered ineffective assistance when they failed to object to the prosecutors' actions and the testimony of the witnesses named above on grounds that the testimony was obtained in violation of section 201(c)(2).  Johnson was prejudiced by counsels' failure to object as the testimony of the named witnesses was central to his conviction on all counts and to his resulting death sentences. The writ must be granted on this ground.

IV.    Typographical Errors In Johnson's Opening Brief

Page 56, first full paragraph, last sentence, should read: "A lengthy list of examples of violations of FRE 602 -- in the context of the CCE supervision element and otherwise -- is set forth below starting at page 135."

<div style="margin-left:50%">

Respectfully submitted,

CORY JOHNSON

By:
Barbara L. Hartung
VSB 38062
1001 East Main Street
Suite 504
Richmond, VA  23219
(804) 649-1088

</div>

13

Edward E. Scher
VSB 23064
Thorsen Marchant & Scher, LLP
316 West Broad Street
Richmond, VA  23220-4219

Counsel for Cory Johnson

September 23, 1998

14

CERTIFICATION

I hereby certify that one copy of the First Amendment To Initial Petition For

Writ Of Habeas Corpus Pursuant to 28 U.S.C. 2255 And To Memorandum In Support Of

Petition was sent by facsimile and was mailed on September __, 1998, to counsel for the

Respondent:

> Robert J. Erickson
> Deputy Chief, Criminal Division
> Appellate Section
> U.S. Department of Justice
> Room 6102, Patrick Henry Building
> 601 D Street, N.W.
> Washington, D.C.  20530
> (202) 514-2841

Barbara L. Hartung

x:\rcp materials\briefs\2255\amend.pet.wpd

15